IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KAREN DUTTON, Individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. 08-755-JJF |
| HARRIS STRATEX NETWORKS, INC.,; GUY M. CAMPBELL; HARALD J. BRAUN; SARAH A. DUDASH; HOWARD L. LANCE, and SCOTT T. MIKUEN, | : : : : : | |
| Defendants. | : : | |
| JACK KLEINMANN, Individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. 08-815-JJF |
| HARRIS STRATEX NETWORKS, INC.,; GUY M. CAMPBELL; HARALD J. BRAUN; SARAH A. DUDASH; HOWARD L. LANCE, and SCOTT T. MIKUEN, | : : : : : | |
| Defendants. | : : | |

**MEMORANDUM ORDER**

Pending before the Court are competing motions for consolidation of the above captioned cases, appointment as lead plaintiff, and approval of lead plaintiffs' selection of lead counsel and liaison counsel. (D.I. 18; D.I. 21; D.I. 25.)[1]

---

[1] Unless otherwise noted, all D.I. numbers referred to herein are D.I. numbers in Civil Action No. 08-755-JJF.

The instant actions are federal class actions on behalf of purchasers of the securities of Harris Stratex, Inc. ("Harris Stratex").  Briefly, Plaintiffs allege that Defendants failed to disclose material facts regarding Harris Stratex's financial well-being.  In particular, prior to July 30, 2008, Harris Stratex allegedly failed to accurately disclose cost of sales and accounts receivable, thereby artificially inflating reported income.  On July 30, 2008, Harris Stratex revealed these misstatements, at which point the price of Harris Stratex stock declined by roughly 35%.  Plaintiffs now raise claims for violations of the Sections 11, 12(a)(2), and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act.

On November 14, 2008, Motions for consolidation of the above captioned actions, appointment of lead plaintiff, and approval of lead counsel were brought by (1) Globis Capital Partners, L.P., (2) the City of Tallahassee Retirement System, (3) the Norfolk County Retirement System, (4) the Duluth Teachers' Retirement Fund Association, and (5) the Rudman Investors Group.  The Rudman Investors Group consists of five related investors that are all allegedly controlled and/or managed by Errol M. Rudman, an investment manager.  (See D.I. 26, Exh. 2.)  Globis Capital Partners, L.P. and the Norfolk County Retirement System have since withdrawn their Motions.  (See D.I. 29; D.I. 35 in 08-578-JJF.)  In addition, after reviewing the Movants' opening briefs,

the City of Tallahassee Retirement System conceded that it does not have a significant enough financial interest to qualify as lead plaintiff. Nevertheless, the City of Tallahassee Retirement System did not formally withdraw its Motion and has reserved the right to file supplemental briefing should it become aware of evidence calling into question the financial interest asserted by the other Movants. (See D.I. 36.) Thus, as of December 5, 2008, only the Duluth Teachers' Retirement Fund Association ("DTRFA") and the Rudman Investors Group were actively pursuing motions to be appointed lead plaintiff.

However, after completion of briefing on the Motions, the DTRFA and the Rudman Investors Group stipulated to a proposed order appointing both of them as co-lead plaintiffs. The DTRFA and the Rudman Investors Group further jointly requested the appointment of three law firms as co-lead counsel and a fourth law firm as liaison counsel.[2] (See D.I. 43 at 3.) The Court

---

[2] Defendants raised objections to the stipulation. (See D.I. 43.) However, in the Third Circuit, Defendants do not have standing to challenge the appointment of lead plaintiffs or their selection of lead counsel. See In re Cendant Corp. Litig., 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nly class members may seek to rebut the presumption [regarding identification of lead plaintiff], and the court should not permit or consider any arguments by defendants or non-class members."); In re Merck & Co. Sec. Litig., 432 F.3d 261, 266 (3d Cir. 2005) (noting that 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) allows only "'a member of the purported plaintiff class' to rebut the lead plaintiff presumptions"); California Pub. Emples. Retirement Sys. v. Chubb Corp., 127 F. Supp. 2d 572, 575 (D.N.J. 2001) ("[T]he majority of courts that have addressed the issue have held that defendants lack standing to object to the adequacy of lead plaintiffs and

must now consider whether to adopt these stipulations.

First, as to the issue of consolidation, when actions before the court involve a common question of law or fact, the Court may consolidate them. See FRCP 42(a). Here, the above-captioned actions both involve the same Defendants. Furthermore, they involved nearly identical allegations regarding materially false and misleading statements as to the financial well-being of Harris Stratex, which are alleged to have artificially inflated the market price of Harris Stratex securities. The Court thus concludes that the above-captioned actions involve common questions of law and fact and should be consolidated, as Movants request.

However, with regard to the appointment of lead plaintiff, the Court will not adopt the suggestion of the DTRFA and the Rudman Investors Group that they be appointed co-lead plaintiffs. "The selection of a lead plaintiff is committed to the court's discretion." In re Molson Coors Brewing Co. Sec. Litig., 233 F.R.D. 147, 150 (D. Del. 2005) (citing Gariety v. Grant Thornton, LLP, 368 F.3d 356, 370 (4th Cir. 2004)). "So too is the approval of a lead plaintiff's choice of lead counsel." Id. In exercising this discretion, the Court must nevertheless follow

---

their chosen counsel . . . .").

the procedures set forth in the Private Securities Litigation Reform Act (the "PSLRA"). Briefly, these procedures call for the Court to "appoint 'the most adequate plaintiff' as the lead plaintiff, and instruct[] [the Court] to 'adopt a presumption' that the most adequate plaintiff is the Movant that 'has the largest financial interest in the relief sought by the class' and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" In re Cendant, 264 F.3d at 222 (citing 15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii)(I)). In identifying the Movant with the largest financial interest in the relief sought by the class, "courts should consider, among other things: (1) the number of shares that the Movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." Id.

In applying these principles, the Court notes, first, that during the class period the Rudman Investors Group purchased or acquired roughly 900,000 shares of Harris Stratex stock while the DTRFA acquired only about 80,000 shares. (See D.I. 38 at 5.) In the Court's view, this consideration tilts strongly in favor of appointing the Rudman Investors Group as lead plaintiff. The DTRFA contends, however, that this consideration is entitled to little weight because the Rudman Investors Group actually sold the bulk of their shares prior to Harris Stratex's corrective

disclosure on July 30, 2008. In other words, according to the DTRFA, the Rudman Investors are, by and large, mere "in and out" purchasers that, as a matter of law, cannot demonstrates losses arising from Harris Stratex's July 30, 2008 corrective disclosure. (See id. at 7-8 (citing Dura Pharm, Inc. v. Broudo, 544 U.S. 336 (2005).)

However, on the day of Harris Stratex's corrective disclosure, the DTRFA and the Rudman Investors Group owned comparable amounts of Harris Stratex stock. (See D.I. 38 at 5 (explaining that the DTRFA held 81,256 shares while the Rudman Investors Group held 71,126 shares).) Thus, with respect to losses that can be closely linked to the July 30, 2008 corrective disclosure, both the DTRFA and Rudman Investors Group likely occupy similar positions. However, at this stage the Court is unable to conclude that the Rudman Investors Group – which acquired more than ten times as many Harris Stratex shares as the DTRFA during the class period – will be unable to prove further losses. Indeed, courts have identified additional viable theories upon which so-called "in and out" traders can prove loss causation prior to a conclusive corrective disclosure.[3] See, e.g., In re BearingPoint, Inc. Sec. Litig., 232 F.R.D. 534, 544 (E.D. Va. 2006) (explaining that "where . . . there are multiple

---

[3] In opposing the DTRFA's Motion for appointment as lead plaintiff, the Rudman Investors Group has provided preliminary facts in support of such a theory. (See D.I. 41 at 14-17.)

6

disclosures, in-and-out traders may well be able to show a loss" and that "the inflationary effect of a misrepresentation might well diminish over time, even without a corrective disclosure," thus allowing in-and-out traders to prove loss causation); In re NTL Sec. Litig., No. 02-3013, 2006 U.S. Dist. LEXIS 5346, at *33-*35 (S.D.N.Y. Feb. 14, 2006) (discussing a "leakage" theory of loss causation in which "disclosing events slowly revealed the false information" that can be tied to "dissipation in the value" of a stock). Thus, given the Rudman Investors Group's more significant ownership interest in Harris Stratex stock during the class period, the Court concludes that it is the presumptive lead plaintiff. Furthermore, in these circumstances, the Court sees no good reason to include the DTRFA as a co-lead plaintiff. See Sinai Roth v. Knight Trading Group, 228 F. Supp. 2d 524, 531 (D.N.J. 2002) (declining to proceed with joint lead plaintiff and co-lead counsel when the proposed lead plaintiffs had "not demonstrated the necessity nor efficacy to the Class' benefit for such designation as joint Lead Plaintiff and co-Lead Counsel").

Attempting to rebut the presumption that the Rudman Investors Group is the lead plaintiff, the DTRFA contends (1) that the Rudman Investors are too numerous to adequately represent the class and (2) that Errol Rudman, the investment manager who purports to control the Rudman Investors Group, may not have authority to litigate on behalf of Phil Missner and

Missner Capital Associates, L.P., two members of the Rudman Investors Group. (See D.I. 38 at 9-12.) In considering whether the Rudman Investors Group will adequately represent the class, the Court should consider "(i) whether the individuals in question had a pre-existing relationship, (ii) the extent of that relationship, (iii) whether the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status, and (iv) whether the group is too large to adequately represent the Class." Smith v. Suprema Specialties, 206 F. Supp. 2d 627, 636-637 (D.N.J. 2002).

The DTRFA concedes, and the Court agrees, that all members of the Rudman Investors Group appear to have a connection to Errol Rudman. (See D.I. 38 at 9; see also D.I. 41, Exh. 3 (declaration of Errol Rudman explaining his relationship to the members of the Rudman Investors Group).) Furthermore, Mr. Rudman has explained in an affidavit that he makes all investment decisions for all members of the Rudman Investors Group, including the two Missner entities. (See D.I. 41, Exh. 3 ¶¶ 2-5.) Given this relationship among the members of the Rudman Investors Group, the Court cannot conclude that the Rudman Investors Group is a mere device created by lawyers for the purpose of achieving lead plaintiff status. Likewise, given Mr. Rudman's authority to make investment decisions on behalf of all entities in the Rudman Investors Group, the Court is unpersuaded

8

that the Rudman Investors Group would be unable to function as a cohesive unit and adequately represent the class. For the same reason, the Court disagrees with the DTFRA's position that Mr. Rudman does not have authority to litigate this case. See In re DaimlerChrysler AG Sec. Litig., 216 F.R.D. 291, 299 (D. Del. 2003)("[A]dvisors with the authority to make investment decisions for their clients are 'purchasers' for purposes of the securities laws such that they have standing.").

Finally, the Court will approve the Rudman Investors Group selection of Kirby McInerny as lead counsel and Bouchard Margules as local counsel for the class. The Court sees no contention from any Movant that either of these firms would not competently represent the class and, on reviewing the materials submitted regarding the Kirby McInerny firm, the Court is satisfied that it would adequately represent the class.

### ORDER

For the reasons discussed, it is hereby ordered that:

1. The Rudman Investors' Motion For Consolidation, Appointment As Lead Plaintiffs And For Approval Of Selection Of Counsel (D.I. 25 in 08-755-JJF; D.I. 21 in 08-815-JJF) is **GRANTED**.

2. The Motion Of Duluth Teachers' Retirement Fund Association To: (1) Consolidate The Related Securities Class Actions; (2) Appoint Duluth Teachers' Retirement

    Fund Association As lead Plaintiff; And (3) Approve Lead Plaintiff Movant's Choice Of Co-Lead And Liaison Counsel (D.I. 21 in 08-755-JJF; D.I. 17 in 08-815-JJF) is **DENIED**.

3. The Motion Of The City Of Tallahassee Retirement System To Consolidate Actions, To Be Appointed lead Plaintiff And For Approval of lead Plaintiff's Selection of Lead Counsel and Liaison Counsel (D.I. 18 in 08-755-JJF; D.I. 14 in 08-815-JJF) is **DENIED**.

4. The Stipulation And [Proposed] Order To: (1) Consolidate The Related Cases; (2) Appoint Co-Lead Plaintiffs; And (3) Approve Co-Lead Plaintiff Choice Of Co-Lead Counsel And Liaison (D.I. 43 in 08-755-JJF; D.I. 47 in 08-815-JJF) is **DENIED**.

5. Civil Action No. 08-815-JJF shall be consolidated into Civil Action No. 08-755-JJF.  All further pleadings in the consolidated case shall be filed under Civil Action No. 08-755-JJF,

6.  Within twenty (20) days of the date of this Memorandum Order the parties shall submit a joint, proposed Scheduling Order for the Court's consideration.  If the parties are unable to reach agreement, they shall outline their disputes in the joint, proposed Scheduling order.

June 5, 2009
DATE

_____
UNITED STATES DISTRICT JUDGE